UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

ERIC N. SAMMONS,

          Plaintiff,

     v.                             Case No. 08-C-749

MICHAEL J. ASTRUE,

          Defendant.

## DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER AND DISMISSING CASE

Procedurally, Eric Sammons' social security case has a lengthy history. Sammons, perhaps through his mother or social worker, applied for Supplemental Security Income (SSI) benefits on February 1, 1993, and disabled adult child's benefits (DACB) on February 24, 1993, based on the record of his father, Wayne Sammons. (R. 15.) Then, on March 18, 1994, Sammons filed an application for disability insurance benefits (DIB) relying upon his own Title II record and an application for SSI, alleging a disability onset date of August 15, 1993. These claims were denied on August 1, 1994, on the ground that Sammons had not demonstrated a relevant disability of sufficient severity since on or before the alleged onset date. There is no evidence that Sammons pursued review of the initial determination.

Sammons filed another application for DACB on the basis of his father's record on March 14, 2005. (R. 117.) An SSA employee determined that the DIB claim "should be reopened as at that time we missed potential CDB [DACB]" claim. (R. 117.) On

1

July 7, 2005, that determination was found to be erroneous and was reversed because the period of time was previously adjudicated." (R. 20.) It was further noted that the failure on the part of the field office to take a DACB claim at the time of Sammons' August 1994 Title II DIB claim was an "FO error" but that "no reopening [was] possible" because Sammons had engaged in substantial gainful activity (SGA) from August 3, 1994, through April 28, 1995. (R. 42.)

Sammons filed additional applications for a period of disability and disability insurance benefits relying upon his own Title II record on July 12, 1995, alleging a disability onset date of April 28, 1995. He also protectively filed an application for supplemental security income on July 12, 1995. This application was approved with a disability onset date of July 1, 1995, based on a bipolar disorder. (R. 15.)

On March 14, 2005, Sammons filed another application for DACB alleging an onset date of February 28, 1994. This application was denied initially and upon reconsideration. Sammons and a vocational expert, Ronald Raketti, testified during the September 5, 2007, hearing regarding that application. In addition, Sammons requested the reopening of previous applications. As a result, Administrative Law Judge Margaret O'Grady concluded as follows:

> The undersigned is of the opinion that, in fact, the process has not even resulted in an <u>initial</u> determination, the point from which all appeal rights flow. The claimant's request to "re-open the August 1, 1994 decision" constitutes neither a revised or a reconsidered determination. Instead, the undersigned is of the opinion that these actions come under the category of "administrative action" not subject to judicial review (see 20 CFR 404.903). The re-opening of the August 1, 1994 is not justified since it does not constitute an "initial determination." Therefore, the Administrative Law Judge finds that claimant's

> request to re-open the August 1, 1994 decision must be
> denied.

(R. 17.)  The Appeals Council denied Sammons' request for review.  (R. 6.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the district court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence" and is based on the proper legal criteria.  *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The ALJ's findings of fact, if supported by substantial evidence, are conclusive.  *Id.* Substantial evidence is such relevant evidence as a reasonable person could accept as adequate to support a conclusion.  *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). This court cannot "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioners."  *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

A claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to ... last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  Additionally, a claimant is entitled to DACB if he is the child of a person who is receiving disability benefits themselves or is deceased. 42 U.S.C § 402(d); 20 C.F.R. § 404.350. The claimant must be dependent on the insured parent, unmarried, and either under age eighteen or have a disability that began before the age of twenty-two. 20 C.F.R. § 404.350.

The commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1)

whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the listed impairments; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy. 20 C.F.R. § 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir.2001).

ANALYSIS

In this appeal, Sammons contends that the SSA erred in not taking his DACB claim at the time of his August 1994 DIB claim, and the ALJ failed to acknowledge the agency's mistakes and did not apply the correct legal standards to the evidence of record. Specifically, Sammons argues that the following findings by the ALJ were erroneous and not supported by the record:

- Sammons returned to work and was engaged in substantial gainful work activity at Fox Valley Carriers, University of Wisconsin, and M&M Office Furniture from March 1993 through at least August 1993.

- Annotations from a computer generated record indicate that on May 5, 1993, claimant withdrew his applications indicating that he did not want to pursue the claim for disabled adult child's benefits and supplemental security income payments.

- A review of the record shows that the claimant worked for a significant period of time following the attainment of age 22 at the substantial gainful work activity levels from August 3, 1994 through April 28, 1995 at Fleming Supermarkets, Boyd-Hunter and Moreland [sic] Hotel (reference Exhibits 1E and 8E)."

According to Sammons, the SSA's errors warrant reopening under the any time rule.

There is no dispute that the computer printout generated by the SSA suggests that Sammons's DACB claim should have been considered at the time of his 1994 DIB

4

claim. And, the court agrees that it is not clear from this record that Sammons withdrew the applications on May 15, 1993. However, the question is whether the ALJ's decision regarding the denial of Sammons's request to reopen the August 1, 1994, initial decision is supported by substantial evidence and based on the proper legal criteria.

In her decision, the ALJ notes that "an initial decision had been made as to eligibility for disability through August 1, 1994" and that the "notice of determination dated August 1, 1994 contained appropriate instructions regarding the time and manner in which claimant could challenge the decision." (R. 16.) Nevertheless, she concluded that the "process has not even resulted in an underline initial determination, the point from which all appeal rights flow." (R. 17.) Notably, the commissioner concedes that "it is not entirely clear why the ALJ concludes that the '1994 decision' was not an initial determination." (Def.'s Mem., 4.)

The ALJ explained that authority to determine what constitutes a "final decision" ordinarily rests with the commissioner who bears the ultimate responsibility for maintaining the integrity of the administrative program. *Matthew v. Eldridge*, 424 U.S. 319, 330, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The regulations provide that a "final decision" which is subject to judicial review is available only when a claimant has received an "initial determination" and has pursued that determination through the administrative appellate process. 20 C.F.R. § 404.900(a). The regulations list those administrative actions which are not "initial determinations," and provide that the denial of a request to reopen a decision is not an "initial determination" subject to judicial review. 20 C.F.R. § 404.903(l). Accordingly, the ALJ cited 20 CFR § 404.903(l) in concluding that Sammons's request to reopen the 1994 decision was nothing more than an administrative action not subject to judicial review.

Moreover, she is correct in noting that Sammons did not pursue administrative review of the August 1, 1994, decision.

Alternatively, Sammons argues that the ALJ's finding that Sammons engaged in SGA is not supported by substantial evidence. Under 20 C.F.R. § 404.1574(c)(5), if the claimant worked more than six months, the commissioner will not consider the work performed as "unsuccessful work attempt" regardless of why it ended. In addition, the earnings guidelines set out in 20 C.F.R. § 404.1574(b)(2) indicate that earnings averaging more than the stated amount per month for the relevant year will create a rebuttable presumption of substantial gainful activity. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

Here, the ALJ's decision is predicated on her finding that SSA's refusal to reopen the August 1, 1994, decision is an administrative action not subject to review. In the procedural history section of the decision, the ALJ finds that "a review of the record shows that the claimant worked for a significant period of time following the attainment of age 22 at the substantial gainful work activity levels from August 3, 1994, through April 28, 1995, at Fleming Supermarkets, Boyd-Hunter and Mooreland Hotel (reference Exhibits 1E and 8E)."

Exhibit 8E, an activity report completed by Sammons on September 26, 2003, does not support a finding of SGA during the period in question. However, Exhibit 1E is the disability report completed by Sammons, which identifies the job title, type of business, the month and year worked, days per week and the rate of pay. In the report, Sammons stated that he changed jobs because of medicine and that he had been terminated from jobs between 1990 and 1995. (R. 139.) Continuing, he advised that he worked in banquet set

up at a hotel from August 1994 to April 1995 and averaged three to five days per week. (R. 143.) Sammons's earnings record indicated that in 1994 he earned $3,349.87 from Moorland Hotel Limited Partnership, and, that in 1995, he was paid $2,416.69 by the same employer. (R. 76.)

Earnings of over $500 (for 1990-1999) in any month create a rebuttable presumption of substantial gainful activity. See 20 C.F.R. § 404.1574(b)(2). Based on the eight month employment period, Sammons appears to have averaged $720 per month. These facts are viewed in the context of the agency's determinations that reopening was not possible "especially" since Sammons had engaged in SGA between 8/3/94 and 4/28/95. (R. 42.)

In his appeal, Sammons submits that the finding of SGA is erroneous and not supported by the record. However, he has failed to cite any evidence in the record respecting the relevant period that rebuts the presumption of substantial gainful activity. The bulk of the extensive medical records before the ALJ dealt with hospitalizations and treatment after the period in question. Nothing in the record which has been brought to the court's attention suggests that while working in banquet set up, Sammons required special assistance, limited hours, or was terminated or ended employment due to his disability. Sammons refers his statement in the report that in 1994 Dr. Kulkarni instructed him "not to work for up to six months," but fails to cite any supporting medical records or otherwise provide the date of this appointment. Indeed, Sammons worked stocking shelves during the month of June 1994 and did not begin work in banquet set up with Mooreland Hotel until August of 1994. Finally, Sammons points to the testimony of the VE, which was equivocal at best. The VE testified that he could not determine how many months Sammons worked

in banquet set up so it was "more than likely" the prior work was not SGA.  Without anything else in the record to support Sammons' position, the court must affirm the decision of the ALJ as based upon substantial evidence in the record.  Now, therefore,

IT IS ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 19th day of August, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE